## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**RANDY MONTOYA**,
                Plaintiff,


vs.                                                        Civ. No. 10-259
                                                           MCA/ACT


**PENSKE TRUCK LEASING, CO., LP;**

**JOE HILL; MIKE MARTINEZ**,

            Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's *Motion To Remand* [Doc10],

which was filed April 28, 2010.  Having considered the parties' submissions, the relevant

law, and otherwise being fully advised in the premises, the Court grants the motion.

## I.    <u>BACKGROUND</u>

According to the *Complaint* (titled "*Notice Of Appeal And Complaint For*

*Violation Of The Human Rights Act, Declaratory Judgment, Prima Facie Tort, Breach Of*

*Contract, Interference With Contractual Relations, Negligent Misrepresentation, And*

*Conversion* [Doc 2-1]), Plaintiff, Randy Montoya, was hired in January 2008 by

Defendant, Penske Truck Leasing Co., LP  (Penske).  [Doc 2-1 at 3]  Defendant Mike

Martinez was Plaintiff's supervisor during the time of his employment.  [Doc 11-1 at 2-3]

At the time he was hired, Plaintiff signed a "Release And Acknowledgment" form, which

stated "I understand that my employment is at-will."  [Doc 2-3 at 8]  Plaintiff does not

contest that he also received the "Penske Policies and Procedures Manual," which

included the following statement:  "Nothing contained in this Manual is intended to

create, or is to be considered as creating, any type of contract, or to create legally

enforceable obligations on behalf of Penske or its associates."  [Doc 2-3 at 10]

On January 9, 2009, Plaintiff was terminated and was informed that the position

was being eliminated.  [Doc 2-1 at 3] He alleges that he later discovered that his position

was not eliminated.  [Id.]  Instead, Plaintiff was replaced by a younger, Caucasian male,

with less experience and less success in a sales position.  [Id. at 3-4]  Based on these

circumstances, Plaintiff filed a complaint with the New Mexico Human Rights

Commission (the Commission).  [Id. at 4]  The Commission determined that probable

cause existed for Plaintiff's claim of discrimination"on the basis of National Origin and

age."  [Id.]  The Commission found no probable cause for discrimination based on "race

or color."  [Id.]

Following the decision by the Commission, Plaintiff filed the *Complaint* in the

Thirteenth Judicial District of the State of New Mexico against Penske, Joe Hill (a

"Mountain Area Vice President"), and Martinez (collectively, Defendants).  [Id. at 1]

Defendants filed a timely notice of removal and argued that complete diversity supported

the jurisdiction of this Court because Martinez, a resident of New Mexico, had been

fraudulently joined.  [Doc 2 at 4]  Plaintiff responds with the instant *Motion To Remand*

[Doc 10], disputes Defendants' claim of fraudulent joinder, and requests that this Court

remand the matter to the Thirteenth Judicial District.

**II.    ANALYSIS**

**A.    Remand**

Federal law provides that the United States District Courts have original

jurisdiction over all civil actions where the matter in controversy exceeds the sum or

value of $75,000 and is brought between citizens of different states.  See 28 U.S.C. §

1332(a).  An action initially brought in a state court may be removed to a federal district

court pursuant to the authority set forth in 28 U.S.C. § 1441, which states, in pertinent

part, that

> [e]xcept as otherwise expressly provided by Act of Congress, any civil
> action brought in a State Court of which the district courts of the United
> States have original jurisdiction, may be removed by the defendant or the
> defendants, to the district Court of the United States for the district and
> division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

Removal statutes are strictly construed, and any doubts about the propriety of

removal are resolved in favor of remand.  See City of Neodesha v. BP Corp. N. Am., 355

F.Supp.2d 1182, 1185 (D. Kan. 2005) (*quoting* Boyer v. Snap-on Tools Corp., 913 F.2d

108, 111 (3rd Cir.1990)).  When removal is challenged, the burden rests with the

removing party to prove that jurisdiction exists.  In this regard, diversity jurisdiction

depends on all parties to one side of the case having a different citizenship from all parties

to the opposing side.  Id.

In some instances, a removing party may assert diversity jurisdiction on the grounds that a non-diverse party was fraudulently joined. Our Tenth Circuit has explained that

> [u]pon specific allegations of fraudulent joinder the court may pierce the pleadings, . . . consider the entire record, and determine the basis of joinder by any means available. . . . The joinder of a resident defendant against whom no cause of action is stated is patent sham . . . and though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists. . . . This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty.

Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964). The party asserting fraudulent joinder bears a heavy burden inasmuch as that party must demonstrate that there is "no possibility" that the non-removing party "would be able to establish a cause of action against [the joined party] in state court." See Montano v. Allstate Indemnity, 211 F.3d 1278, * 2 (10th Cir. 2000) (unpublished disposition) (*quoting* Hart v. Bayer Corp, 199 F.3d 239, 246 (5th Cir. 2000) (alteration in original). "This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." Montano, 211 F.3d at *2.

After initially resolving all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party, the Court's task is "then to determine whether that party has any possibility of recovery against the party whose joinder is

questioned." <u>Id.</u> at *1.  "[R]emand is required if any one of the claims against the non-diverse defendant . . . is possibly viable."  <u>Id.</u> (*citing* <u>Green v. Amerada Hess Corp.</u>, 707 F.2d 201, 206 (5th Cir.1983)).  The Court evaluates state law in order to consider whether any of Plaintiff's claims against Martinez are "possibly viable."  <u>Montano</u>, 211 F.3d at *2; <u>See Hart v. Bayer Corp.</u>, 199 F.3d 239, 246 (5th Cir. 2000) ("To prove their allegation of fraudulent joinder [removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against them in state court." (alterations in original) (internal quotation marks and citation omitted)).  Thus, the Court will first recount Plaintiff's factual allegations—in order to determine the basis for joinder by "any means available," <u>Dodd</u>, 329 F.2d at 85, and then will address whether those factual allegations raise "possibly viable" claims pursuant to state law.  <u>Montano</u>, 211 F.3d at *2.

## B.   <u>Factual Allegations</u>

In the Complaint, Plaintiff alleges generally that he was hired by Penske in January 2008, as a "Lease Sales Representative."  [Doc 2-1 at 2]  He maintains that Defendants "promised the Plaintiff that his position was permanent as long as he performed well" and that he "relied upon the promises and assurances of the Defendants to leave a company he worked at for five years."  [<u>Id.</u>]  In 2008, Plaintiff finished as the top producing "Lease Sales Representative" for the Albuquerque office.  [<u>Id.</u>]  In January 2009, Defendants informed Plaintiff that his position was being eliminated.  [<u>Id.</u>] He later discovered that his position had not been eliminated.  [<u>Id.</u>]  Instead, he had been replaced by a younger,

Anglo, male, "who was not as experienced as Plaintiff and not as qualified for the job."

[Id.]  Plaintiff further alleges that another "Lease Sales Representative"in the same

Albuquerque office, who was younger and Caucasian, was not terminated even though he

produced lower sales than did Plaintiff.  [Id.]

       Plaintiff's affidavit, attached to the *Memorandum In Support Of Plaintiff's Motion*

*For Remand This Action To State Court* [Doc11], sets forth additional factual allegations.

He states that he worked at Snap On Equipment from June 2003 until January 2008.

[Doc 11-1 at 1]  In the winter of 2007, Penske contacted him about a job opportunity and

invited him to be interviewed.  [Id.]  Plaintiff's first interview was with Martinez.  [Id.]

Plaintiff states that he was "advised that it was a permanent position," that "Penske had a

practice that they believed in keeping their employees for a long time," and that "as long

as [he] performed well, [he] could look forward to a long career with Penske."  [Id.]

During the first and the second interview, Plaintiff advised the interviewers that he "was

concerned about the security of the job, as [he] was presently employed with the same

company for 5 years."  [Id. at 2]  He alleges that he was told "unless [he] was

unproductive, [he] would have to try hard to lose [his] job."  [Id.]

       During the third interview, Martinez and Hill were both present.  [Id.]  The

"tenure" of Penske employees was again addressed.  [Id.]  Martinez and Hill "described

their stringent interview process again as an illustration of their practice that they did not

want to keep changing employees but in fact were proud that they did everything they

could to keep productive employees for their career."  [Id.]  Further, Plaintiff was told

that "Penske does not believe in turning over their employee[s]."  [Id.]  At a fourth

interview, Plaintiff was informed that Martinez "would be the boss of the person hired for

the position" and that Martinez "would ultimately be the person who would be

responsible for deciding this person's future with the company based upon performance

on the job."  [Id. at 2-3]  Throughout his employment with Penske, Plaintiff states that he

was "told on several occasions by [Martinez] that as long as [he] continued to do well,

[he] would always have this same sales position with Penske."  [Id. at 5]  Plaintiff further

averred that at the time of his termination, he was "informed that [he] was terminated

because [his] job was being eliminated" and that the "termination was not related to [his]

performance."  [Id. at 4]

With these factual allegations as background, the Court turns to Plaintiff's claims

under New Mexico law.  In his *Memorandum In Support Of Plaintiff's Motion For

Remand This Action To State Court* [Doc11], he argues that three of his claims against

Martinez are sufficiently viable to prevent removal:  Claim Three for intentional

interference with contractual relationships, Claim Six for negligent misrepresentation, and

Claim Four for prima facie tort.  [Id. at 14]  Because the Court determines that Plaintiff's

claims for intentional interference with contractual relations and negligent

misrepresentation, as discussed below, are "possibly viable," the Court elects not to

address Plaintiff's arguments concerning the theory of prima facie tort.  See Montano,

211 F.3d at *2. .

**C.**       **Intentional Interference with Contractual Relations**

In order to establish intentional interference with contractual relations, a plaintiff must show (1) that the defendant had knowledge of the contract, (2) that performance on the contract was refused, (3) that the defendant played an active and substantial part in causing the plaintiff to lose the benefit of the contract, (4) that damages flowed from the breached contract, and (5) that the defendant induced the breach "without justification or privilege to do so." Ettenson v. Burke, 2001-NMCA-003, ¶ 14, 130 N.M. 67, 17 P.3d 440.  "Not every interference leading to a breach of contract amounts to an unlawful act or a civil action; tort liability attaches only when the interference is without justification or privilege." Id. (internal quotation marks and citation omitted).  The plaintiff must show that the defendant acted with either "an improper motive or by use of improper means." Id.

The Ettenson Court held, as a matter of first impression, that  "an employee can sue his supervisor, individually, for the tort of interference with contractual relations, meaning contractual obligations owed by the corporation to the employee, and that this tort can provide the foundation for a civil conspiracy action." Id. ¶ 1.  Although, it is well established that "[p]arties to a contract cannot bring an action for tortious interference with an existing contract against each other," Deflon v. Sawyers, 2006-NMSC-025, ¶ 6, 139 N.M. 637, 137 P.3d 577 (internal quotation marks and citation omitted), "[a] corporate officer acting outside the scope of authority . . . may be liable for interfering with a corporate contract." Id. ¶ 7.  This is so because

an officer acting on behalf of a corporation should have the authority to
breach a corporation's contract, leaving the corporation to answer for the
authorized breach in a breach of contract action.  An officer acting outside
the scope of his or her employment and in his or her own private interest
has no authority to breach the corporation's contract, and that officer should
not be able to hide behind a corporate shield for unauthorized conduct.

Id. ¶ 9 (internal citation omitted).  Thus, "[i]n New Mexico, corporate officers may be

liable for interfering with corporate contracts if such interference is in bad faith and

against the best interests of the corporation."  Id.

  In cases that involve "at-will" employment contracts, the New Mexico courts

require that "an improper motive must be the sole motive" for interfering with the

contract.  Fikes v. Furst, 2003-NMSC-033, ¶ 21, 134 N.M. 602, 81 P.3d 545.  When,

however, the "interest at stake is an existing contractual relationship," the plaintiff must

"still prove that the defendant acted with either an improper motive or improper means,

but the improper motive need not be the sole motive."  Id. ¶ 22.  Although New Mexico

generally applies at-will principles in the absence of an "express contract to the contrary,"

an exception to this general rule "is the existence of an implied contract that limits an

employer's authority to discharge."  Zarr v. Washington Tru Solutions, LLC, 2009-

NMCA-050, ¶ 18, 146 N.M. 274, 208 P.3d 919 (internal quotation marks and citation

omitted).

  Defendants proffer four arguments to support their position that Plaintiff's claim

against Martinez for intentional interference with contractual relations is not viable.

Defendants contend, first, that "Plaintiff has not alleged a shred of evidence . . . to suggest

a possibility of prevailing against Martinez on a claim for interference with a contact [sic]." [Doc 12 at 5] In making this argument, Defendants disregard the standard that the Court employs to determine fraudulent joinder. Defendants "must demonstrate that there is no possibility" that Plaintiff would be able to establish the cause of action against Martinez in state court. Montano, 211 F.3d at *1 (internal quotation marks and citation omitted). As has been stated, "[t]his standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." Id. * 2. The question, thus, is not whether Plaintiff has "alleged . . . evidence" to support the claim, as Defendants suggest, but whether the claim is "possibly viable." Id.

Second, Defendants attempt to distinguish Ettenson by arguing that the case "merely confirmed that, under the right set of facts, a corporate officer may be individually sued for *conspiracy* to commit a tort, including intentional interference with a contract, where his actions were outside the scope of his authority and were undertaken with a 'private interest with no benefit to the company.'" [Doc 12 at 5 (emphasis in original) (*quoting* Ettenson, 2000-NMCA-003, ¶ 18.)] However, Defendants fail to demonstrate or explain how that distinction—that Ettenson was in the context of a conspiracy claim—makes any difference to viability of the current claim. Nothing in the language of Ettenson expressly limits its holding solely to conspiracy claims. The Court is thus not persuaded by this argument.

Defendants' third contention is that because Plaintiff's employment was at-will, "[o]bviously, there is no cause of action for tortious interference with a non-existent contract." [Doc 12 at 6]  New Mexico law, however, treats at-will employment arrangements as "prospective contracts."  See Fikes, 2003-NMSC-033, ¶ 21.  As such, although a different and more stringent "sole motive" analysis is employed for at-will arrangements, the tort of interference with contractual relationships remains an available cause of action.  See Zarr, 2009-NMCA-050, ¶¶ 6-7, 17.  Further, Plaintiff has alleged the existence of an implied contract, based on representations of long-term employment.  In the event that a court determines that an implied contract existed, Plaintiff would not be limited to the "sole motive" test.  See Fikes, 2003-NMSC-033, ¶ 22; West v. Washington Tru Solutions, LLC, 2010-NMCA-001, ¶¶ 16,18, 147 N.M. 424, 224 P.3d 651 (agreeing that a genuine issue of material fact existed as to whether an implied employment contract existed because clear disclaimers in an employment manual could be "superceded by other representations made by the employer outside of the manual—for instance, in oral statements").

Finally, Defendants cite Salazar v. Furr's, Inc., 629 F.Supp 1403 (D. N.M. 1986), for support.  [Doc 12 at 6-7]  In Salazar, the United States District Court for the District of New Mexico dismissed the plaintiff's complaint for interference with contractual relations because the defendant, who was the president of the defendant company, could not be "held liable as a third party for a transaction that occurred between the [d]efendant corporation and the [p]laintiff."  Id. at 1410.  The New Mexico Supreme Court considered

Salazar when it decided Deflon.  2006-NMSC-025, ¶¶ 6-7.  The Deflon Court observed the following:

> In Salazar, the United States District Court for the District of New Mexico held that the president of a corporation was not liable for tortious interference with a contract for firing a pregnant employee before pension benefits could vest.  Although Salazar offered little discussion of the issue, its holding was presumably based on the implicit finding that the president was acting as an agent of the corporation, and therefore was not a third party to the contract.  A corporate officer acting outside the scope of authority, however, may be liable for interfering with a corporate contract.

Deflon, 2006-NMSC-024, ¶ 7 (internal citations omitted).  Plaintiff's complaint and affidavit could be reasonably read to allege that Martinez interfered with the employment contract—whether prospective (at-will) or established—between Plaintiff and Penske for solely discriminatory reasons.  Such behavior would be outside the scope of Martinez's authority, and as such the cause of action would lie.  Deflon, 2006-NMSC-025, ¶ 7.

Thus, the facts of the present case do not foreclose the cause of action, although it is not an "easy" cause to prove.  See Ettenson, 2000-NMCA-003, ¶ 14 ("Establishing tortious interference with contract is not easy.").  The burden for Defendants to establish fraudulent joinder, however, is also heavy, and they have failed to demonstrate that there is no possibility that Plaintiff will succeed.  See Montano, 211 F.3d at *1-2.  As a result, this claim against Montoya remains "viable," and remand is necessary based on Defendants' failure to achieve complete diversity.

**D.    Negligent Misrepresentation**.

The elements of negligent misrepresentation are (1) that Defendants made a

material misrepresentation of fact to Plaintiff, (2) that Plaintiff relied upon such

representation, (3) that Defendants knew the representation was false at the time it was

made or made the representation recklessly, and (4) that Defendants intended to induce

Plaintiff to rely on such representation." Healthsource, Inc. v. X-Ray Assoc. of N.M.,

2005-NMCA-097, ¶ 30, 138 N.M. 70, 116 N.M. P.3d 861.  Defendants contend that

Plaintiff's claim fails because he has not alleged that any of Martinez's statements were

untrue, that Martinez intended for Plaintiff to rely on the statements, that Martinez did not

believe the statements were true, that any damage resulted from Martinez's

representations, or that Martinez's statements are attributable to him personally as

opposed to Penske.  [Doc 12 at 12-13]

     Turning to Plaintiff's affidavit and his complaint, it is clearly stated that Martinez

repeatedly assured Plaintiff that if he performed well, his job was secure and that when

Plaintiff was terminated, Martinez told him that the termination was not related to his

performance.  Thus, either Martinez's early assurances were not true or his statements at

the time of termination were not true.  The allegations further demonstrate that  Martinez

intended for Plaintiff to rely on the statements about job security—Plaintiff told Martinez

that he was "concerned about the security of the job" and was assured that "unless [he]

was unproductive, [he] would have to try hard to lose [the] job."  [Doc 11-1 at 2]

     Defendants maintain that Plaintiff has not alleged that Martinez believed that the

assurances regarding job security were false.  The standard, however,  for negligent

representation "only requires a failure to exercise ordinary care in obtaining or

communicating the statement." Eckhardt v. Charter Hosp. of Albuquerque, Inc., 1998-NMCA-017, ¶ 55, 124 N.M. 549, 953 P.2d 772.  Given Plaintiff's brief, one-year employment with Penske, an inference arises that Martinez did not "exercise ordinary care" when he repeatedly assured Plaintiff that as long as he continued to "do well," he would "always have this same sales position with Penske." [Id. at 5]  In addition, Plaintiff has stated that he "would not have accepted this employment [at Penske] if [he] did not think [he] had a commitment from Penske to employ [him] for as long as [he] satisfactorily performed [the] job." [Id. at 3]  Thus,  Plaintiff maintains that he would not have quit his original job if Martinez had not made assurances that the Penske position was stable.

Regarding the final point, Defendants provide no authority for their argument that because Martinez was employed by Penske and acting on its behalf when Plaintiff was hired, all of his statements to Plaintiff during the hiring process "would be the representations of the company" and not personally attributable to him.  [Id. at 13]  If Plaintiff succeeds in establishing that Penske violated an implied employment contract, Martinez is correct that Plaintiff would be entitled to no damages for negligent misrepresentation.  If, however, Plaintiff fails to establish an implied employment contract, he would be permitted to rely on a theory of negligent misrepresentation against Martinez.  See Yeitrakis v. Schering-Plough Corp., 804 F.Supp. 238, 243 (D.N.M. 1992) (determining that if the plaintiff succeeds in proving the existence of an implied contract, "there will have been no misrepresentation.  If, on the other hand, he should fail to prove

such a contract, he will be permitted to seek damages on the tortious theory of negligent misrepresentation").

The Court concludes that Defendants have failed to demonstrate that Plaintiff cannot possibly succeed on a claim for negligent misrepresentation.  Accordingly, the viability of Claim 6 also presents a basis to support remand to the Thirteenth Judicial District.

**E.**      **Objections To Plaintiff's Evidence**

Defendants submitted several pages of evidentiary objections to the affidavit submitted by Plaintiff.  The objections address the relevancy, the clarity, and the admissibility of Plaintiff's statements.  [See generally Doc 13]  Plaintiff has responded to each objection with an evidentiary argument.  For example, he responded to clarity objections by pointing out that the statement was clear when read in context, and he observed that the purportedly hearsay statements are actually statements of a party opponent, and thus admissible.  [See generally Doc 16]

Defendants' objections to the form are premature at this early stage of litigation. Even at the later summary judgment stage, evidence to support a plaintiff's claim need not be presented in a form admissible at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  At this stage in proceedings, the Court accepts the statements in Plaintiff's affidavit for the purpose of determining whether his claims are "possibly viable," Montano, 211 F.3d at *2.

**III.**     **CONCLUSION**

For the foregoing reasons and because Plaintiff's claims against Martinez for intentional interference with contractual relations and negligent misrepresentation are possibly viable, Plaintiff's *Motion* is well-taken.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion To Remand* [Doc 10] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is hereby remanded to the Thirteenth Judicial District, State of New Mexico pursuant to 28 U.S.C. Section 1446(b)

**SO ORDERED** this 23rd day of June, 2010, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
**United States District Judge**